# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DAWN A. CAWVEY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Civil No. 17-cv-473-JPG-CJP |
| ) | |
| NANCY A. BERRYHILL, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM AND ORDER

In accordance with 42 U.S.C. § 405(g), plaintiff Dawn M. Cawvey, represented by counsel, seeks judicial review of the final agency decision denying her application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) benefits pursuant to 42 U.S.C. § 423.

## Procedural History

Ms. Cawvey applied for benefits in January 2013, alleging a disability beginning in 2010. She later amended the alleged date of onset to August 1, 2012. After holding an evidentiary hearing, ALJ Koren Mueller denied the application on May 2, 2016. (Tr. 19-31.) The Appeals Council denied review, and the decision of the ALJ became the final agency decision subject to judicial review. (Tr. 1.) Administrative remedies have been exhausted and Caawvey filed a timely complaint in this Court.

## Plaintiff's Arguments

Plaintiff makes the following arguments:

1. The ALJ failed to account for plaintiff's limitations in ability to maintain concentration, persistence or pace in assessing plaintiff's mental residual functional capacity (RFC).

2. The ALJ erred in failing to identify and resolve conflicts between the testimony of

the vocational expert and information contained in the *Dictionary of Occupational Titles.*

## **Legal Standards**

To qualify for benefits, a claimant must be "disabled" pursuant to the Social Security Act. The Act defines a "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The physical or mental impairment must result from a medically demonstrable abnormality. 42 U.S.C. § 423(d)(3). Moreover, the impairment must prevent the plaintiff from engaging in significant physical or mental work activity done for pay or profit. 20 C.F.R. § 404.1572.[1]

Social Security regulations require an ALJ to ask five questions when determining whether a claimant is disabled. The first three questions are simple: (1) whether the claimant is presently unemployed; (2) whether the claimant has a severe physical or mental impairment; and (3) whether that impairment meets or is equivalent to one of the listed impairments that the regulations acknowledge to be conclusively disabling. 20 C.F.R. § 404.1520(a)(4); *Weatherbee v. Astrue*, 649 F.3d 565, 569 (7th Cir. 2011). If the answers to these questions are "yes," then the ALJ should find that the claimant is disabled. *Id.*

At times, an ALJ may find that the claimant is unemployed and has a serious impairment, but the impairment is neither listed in nor equivalent to the impairments in the regulations— failing at step three. If this happens, then the ALJ must ask a fourth question: (4) whether the claimant is able to perform his or her previous work. *Id.* If the claimant is not able to, then the

---

[1] The legal standards for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) are largely the same. The above paragraph in this order cites the relevant statutory provisions for DIB, while the SSI provisions are located at 42 U.S.C. §§ 1382c(a)(3)(A), 1382c(a)(3)(D), and 20 C.F.R. § 416.972. Most citations herein are to the DIB regulations out of convenience, but also apply to SSI challenges.

burden shifts to the Commissioner to answer a fifth and final question: (5) whether the claimant is capable of performing *any* work within the economy, in light of the claimant's age, education, and work experience. If the claimant cannot, then the ALJ should find the claimant to be disabled. *Id.*; *see also Simila v. Astrue*, 573 F.3d 503, 512-13 (7th Cir. 2009); *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001).

A claimant may appeal the final decision of the Social Security Administration to this Court, but the scope of review here is limited: while the Court must ensure that the ALJ did not make any errors of law, the ALJ's findings of fact are conclusive as long as they are supported by "substantial evidence." 42 U.S.C. § 405(g). Substantial evidence is evidence that a reasonable person would find sufficient to support a decision. *Weatherbee*, 649 F.3d at 568 (citing *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003)). The Court takes into account the entire administrative record when reviewing for substantial evidence, but it does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. *Brewer v. Chater*, 103 F.3d 1384, 1390 (7th Cir. 1997); *Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014). But even though this judicial review is limited, the Court should not and does not act as a rubber stamp for the Commissioner. *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010).

### **The ALJ's Decision**

ALJ Mueller followed the five-step analytical framework described above. She determined that plaintiff had not worked since the alleged onset date and that she was insured for DIB through March 31, 2015.

The ALJ found that plaintiff had severe impairments of seizure disorder, degenerative disc disease, migraine headaches, asthma, mild carpal tunnel syndrome, mood disorder, and

anxiety disorder, and that these impairments do not meet or equal a listed impairment. At this step, the ALJ determined that plaintiff had moderate difficulties in both social functioning and ability to maintain concentration, persistence or pace.

The ALJ found that Ms. Cawvey had the residual functional capacity (RFC) to perform work at the light exertional level with some physical and mental limitations. The mental limitations were that plaintiff was limited to performing simple, repetitive, routine tasks in a work environment free of fast-paced production requirements, involving simple work-related decisions with few work-place changes. She was also limited to only occasional interaction with the public.

Based upon the testimony of a vocational expert, the ALJ found that plaintiff not was capable of performing her past work as a bus driver, but she was not disabled because she was capable of performing other jobs that exist in significant numbers in the national economy.

## The Evidentiary Record

The Court has reviewed and considered the entire evidentiary record in formulating this Memorandum and Order. The following summary of the record is directed to the points raised by plaintiff and is confined to the relevant time period. As plaintiff addresses only her mental limitations, a discussion of the medical evidence related to her physical condition is unnecessary.

1. **Agency Forms**

Plaintiff was born in 1974 and was 38 years old on the amended date of disability. (Tr. 264.) She attended school through the tenth grade. (Tr. 269.) She alleged anxiety and difficulty getting along with people. (Tr. 307.) She also alleged difficulty with concentration and memory. (Tr. 332.) She had worked in the past as a school bus driver. (Tr. 293.)

2. **Evidentiary Hearing**

Plaintiff was represented by an attorney at the evidentiary hearing in February 2016. (Tr. 40.) Plaintiff testified that she was unable to work because she had seizures. She took medication and had a vagus nerve stimulator implanted, but she continued to have seizures. (Tr. 52-56.) She had migraine headaches about four times a week. (Tr. 58.)

Plaintiff had anxiety, which caused her to be "real fidgety" and easily aggravated and upset. Her primary care physician, Dr. Hendricks, prescribed Lorazepam for a while, but then recommended that she see a psychiatrist. She had not been able to find a psychiatrist who would accept her insurance. (Tr. 63-64.)

A vocational expert also testified. The ALJ asked her, "Dr. Watts, do you understand that if you give us an opinion that conflicts with the information in the Dictionary of Occupational Titles and Selected Characteristics of Occupations Defined, that you need to advise us of the conflict and the basis for your opinion?" The VE responded in the affirmative. (Tr. 66.)

The ALJ asked the VE a hypothetical question that corresponded to the ultimate RFC findings. The VE testified that this person could do not plaintiff's past job as a bus driver. She could, however, do other jobs such as router, garment sorter, and stock checker. (Tr. 68-70.)

Plaintiff's counsel asked no questions of the VE. (Tr. 72.)

### 3. Medical Records

Plaintiff's medical records indicate a history of anxiety and depression going back to at least 2012. (Tr. 411, 419, 424, 622, 626, 755, 757, 819, 838, 870, 873, 1005, 1037, 1046, 1049.) She was prescribed Lorazepam for anxiety. (*See, e.g.*, Tr. 1047.) The transcript does not contain any records from a mental health specialist.

In August 2013, Stephen Vincent, Ph.D., performed a consultative psychological exam.

5

He noted that she had been taking Lorazepam for about six years for anxiety with episodes of panic attacks and generalized anxiety. She had "troubles concentrating and staying focused on task[s] due to her preoccupations with negativity and pessimism." On exam, her mood was depressed. He diagnosed her with major depression, generalized anxiety disorder, seizure disorder with tonic-clonic grand mal-type seizures, asthma, migraine headaches, and spinal stenosis. (Tr. 716-719.)

    4.  **State Agency Consultant's Mental RFC Assessment**

In September 2013, Howard Tin, Psy.D, assessed plaintiff's mental RFC based on a review of the file contents. He used an electronic version of an agency form that is commonly used for this purpose in social security cases. (Tr. 84-86.) The form consists of a series of questions and a list of mental activities. The consultant is asked to rate the applicant's limitations in these areas. Dr. Tin answered "yes" to the question "Does the individual have sustained concentration and persistence limitations?" He rated her as "moderately limited" in ability to carry out detailed instructions and in ability to maintain attention and concentration for extended periods. He also rated plaintiff as moderately limited in ability to interact appropriately with the general public. In the section for narrative remarks, Dr. Tin wrote, "Claimant has difficulty carrying out detailed instructions and maintaining attention and concentration for extended periods of time, however the person is capable of performing simple tasks."

In February 2014, a second state agency consultant, Dr. Henson, completed a Mental RFC Assessment form. His responses were exactly the same as Dr. Tin's. (Tr. 136-92.)

## Analysis

The ALJ's RFC assessment and the hypothetical question posed to the VE must both incorporate all of the limitations that are supported by the record. *Yurt v. Colvin*, 758 F.3d 850,

857 (7th Cir. 2014). This is a well-established rule. *See Stewart v. Astrue*, 561 F.3d 679, 684 (7th Cir. 2009) (collecting cases). If the ALJ finds that a plaintiff has a moderate limitation in maintaining concentration, persistence or pace, that limitation must be accounted for in the hypothetical question posed to the VE; in most cases, limiting the plaintiff to simple, repetitive tasks or to unskilled work is not sufficient to account for moderate concentration difficulties. *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 620 (7th Cir. 2010).

Here, the ALJ found that plaintiff had moderate difficulties in maintaining concentration, persistence or pace. (Tr. 20.) She made this finding at step three of the sequential analysis when determining whether plaintiff's mental impairments meet or equal a listed impairment. She noted that, while the step three determination is not a mental RFC assessment per se, the ultimate RFC assessment "reflects the degree of limitation I have found in the 'paragraph B' mental function analysis." (Tr. 20.) Further, the ALJ afforded "significant weight" to the opinions of Drs. Tin and Henson. (Tr. 28.) However, neither the hypothetical question posed to the VE nor the RFC assessment mentioned a limitation in concentration, persistence or pace. Rather, the ALJ limited plaintiff to "simple, routine, repetitive tasks in a work environment free of fast-paced production requirements involving simple, work-related decisions with few workplace changes" and only occasional interaction with the public. (Tr. 69.)

The Seventh Circuit has repeatedly held, with exceptions not applicable here, that a limitation to simple, repetitive tasks or unskilled work does not adequately account for a moderate limitation in maintaining concentration, persistence or pace. In *Stewart, supra*, a case decided in 2009, the Court observed, "The Commissioner continues to defend the ALJ's attempt to account for mental impairments by restricting the hypothetical to 'simple' tasks, and we and our sister courts continue to reject the Commissioner's position." *Stewart*, 561 F.3d at 685. The

Court has reaffirmed that position several times in recent years. *O'Connor-Spinner, supra; Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014); *Varga v. Colvin*, 794 F.3d 809, 814 (7th Cir. 2015); *Taylor v. Colvin*, 829 F.3d 799, 802 (7th Cir. 2016); *Lanigan v. Berryhill*, 865 F.3d 558, 565 (7th Cir. 2017).

The Commissioner mainly defends the ALJ's decision by arguing that substantial evidence supported the ALJ's RFC assessment, pointing to evidence suggesting that plaintiff has little or no limitation in concentration, persistence or pace. This argument skirts the issue raised by plaintiff. The ALJ afforded significant weight to the opinions of Drs. Tin and Henson, and found that plaintiff had moderate limitations in maintaining concentration, persistence or pace; she also said that her RFC assessment would reflect those limitations.

The Commissioner also argues that the ALJ is not required to conclude that "a moderate difficulty corresponds to an inability to perform a certain task, such as sustaining an adequate level of concentration." (Doc. 13, p. 5.) Again, this argument does not respond to the argument made by plaintiff here. Plaintiff is not arguing that a moderate limitation equates a complete inability to perform a task. No one knows whether the VE would have testified that there are jobs that can be done by a person with a moderate limitation in this area because the ALJ did not pose that hypothetical question. The Commissioner also argues that plaintiff's counsel could have pursued that line of questioning, but that argument ignores the fact that the Commissioner bears the burden at step five of establishing that there are jobs that plaintiff is capable of performing. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001).

The Seventh Circuit has reiterated in precedential cases decided after *O'Connor-Spinner* that a limitation to simple, repetitive, routine tasks does not account for a moderate limitation in maintaining concentration, persistence or pace. *Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir.

2014); *Varga v. Colvin*, 794 F.3d 809, 814 (7th Cir. 2015); *Taylor v. Colvin*, 829 F.3d 799, 802 (7th Cir. 2016); *Lanigan v. Berryhill*, 865 F.3d 558, 565 (7th Cir. 2017). All of these cases were decided before the Commissioner filed her brief here, but her brief does not discuss them at all.

The Commissioner does not argue that plaintiff's limitations in concentration, persistence or pace were adequately addressed by the exclusion of fast-paced production requirements and work place changes. That argument would be unavailing here because the ALJ explicitly linked those limitations to plaintiff's "anxiety with change and stress." (Tr. 29). The ALJ did not, however, say that those limitations were intended to accommodate plaintiff's difficulties with maintaining concentration, persistence or pace.

The bottom line here is that the ALJ found that Ms. Cawvey had moderate difficulties in maintaining concentration, persistence or pace. It is true, as the Commissioner points out, that she made this finding at step three. Regardless, she represented that the RFC assessment would reflect the degree of limitation that she found at that step. Binding Seventh Circuit precedent establishes that a limitation to simple, routine tasks or to unskilled work does not adequately account for a moderate limitation in maintaining concentration, persistence or pace. The Commissioner has not even attempted to distinguish those precedents.

Plaintiff's second point is that the ALJ failed to identify and resolve conflicts between the testimony of the VE and information contained in the *Dictionary of Occupational Titles* ("DOT").

In making the step five determination, the ALJ generally relies on the DOT for information about the typical characteristics of jobs as they exist in the economy. An ALJ is required to take administrative notice of job information contained in various publications,

including the DOT, published by the Department of Labor. *See* 20 C.F.R. § 404.1566(d)(1). The ALJ often also relies on testimony from a VE to "supplement the information provided in the DOT by providing an impartial assessment of the types of occupations in which claimants can work and the availability of positions in such occupations." *Weatherbee v. Astrue*, 649 F.3d 565, 569 (7th Cir. 2011).

When a VE testifies, the ALJ is required to ask the VE whether there are any conflicts between her testimony and the information in the DOT:

> Occupational evidence provided by a VE or VS [vocational specialist] generally should be consistent with the occupational information supplied by the DOT. When there is an apparent unresolved conflict between VE or VS evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE or VS evidence to support a determination or decision about whether the claimant is disabled. At the hearings level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency.

SSR-004p, 2000 WL 1898704, at *2.

The Seventh Circuit agrees that, pursuant to SSR-004p, an ALJ has an affirmative duty to ask the VE whether her testimony conflicts with information contained in the DOT. *Prochaska v. Barnhart*, 454 F.3d 731, 735 (7th Cir. 2006). Here, the ALJ did not literally ask whether there were any conflicts. Instead, she asked "Dr. Watts, do you understand that if you give us an opinion that conflicts with the information in the Dictionary of Occupational Titles and Selected Characteristics of Occupations Defined, that you need to advise us of the conflict and the basis for your opinion?" The VE responded in the affirmative. (Tr. 66.)

For each job title, the DOT specifies whether certain physical and mental activities are required, and, if so, the frequency with which they are required. Plaintiff argues, and the Commissioner does not dispute, that the DOT does not address most social or mental limitations,

including the mental limitations (other than the limitation to simple, routine, repetitive work) posed by the ALJ to the VE. The VE did not inform the ALJ that she was testifying on a subject not addressed by the DOT.

At the hearing, plaintiff's counsel did not point out any conflict between the VE's testimony and the DOT. Counsel asked no questions at all of the VE. Therefore, in this Court, plaintiff "now has to argue that the conflicts were obvious enough that the ALJ should have picked up on them without any assistance, for SSR 00–4p requires only that the ALJ investigate and resolve *apparent* conflicts between the VE's evidence and the DOT." *Overman v. Astrue*, 546 F.3d 456, 463 (7th Cir. 2008), citing *Prochaska v. Barnhart*, 454 F.3d 731, 735 (7th Cir. 2006) (emphasis in original).

Relying on *Zblewski v. Astrue*, 302 F. App'x 488 (7th Cir. 2008), defendant argues that there is no conflict where the VE testifies about information that is not contained in the DOT.

In *Zblewski*, the ALJ asked the VE a hypothetical question that included a limitation to a sit/stand option. The ALJ there did not ask the VE whether his testimony conflicted with the DOT. Plaintiff argued that the ALJ erred because he failed to resolve the inconsistency between the VE's testimony and the DOT, based on the absence of a definition in the DOT of a sit/stand option. Noting that the ALJ has a duty to enquire into and resolve *apparent* conflicts, the Seventh Circuit disagreed, holding that "Because the DOT does not address the subject of sit/stand options, it is not apparent that the testimony conflicts with the DOT." *Zblewski,* 302 F. App'x at 494.

Defendant reads *Zblewski* to mean that there is no conflict between the VE's testimony and "the occupational information supplied by the DOT" if the DOT does not supply such information. See, Doc. 21, p. 4. In the Court's view, this is too broad a reading. First, of course,

*Zblewski* is a nonprecedential case. More importantly, because the conflict had not been identified at the hearing in *Zblewski*, the issue before the Court was whether the conflict was apparent such that, under *Overman, supra*, the ALJ had a duty to enquire into the conflict. In that context, the Seventh Circuit's holding, quoted above, is more properly read as meaning that the conflict was not apparent, and not, as defendant would read it, that there was no conflict.

Moreover, this Court's reading of *Zblewski* is in line with SSR 00-4p. In the section of the SSR entitled "Reasonable Explanations for Conflicts (or Apparent Conflicts) in Occupational Information," the agency gives two examples of "reasonable explanations for such conflicts." The first example involves evidence from a VE which includes "information not listed in the DOT." The second example is "The DOT lists maximum requirements of occupations as generally performed, not the range of requirements of a particular job as it is performed in specific settings. A VE, VS, or other reliable source of occupational information may be able to provide more specific information about jobs or occupations than the DOT." SSR-004p, 2000 WL 1898704, at *2-3. Thus, it would appear that the agency's own interpretation is that there is a conflict between the VE's testimony and the DOT where the VE testifies about information that is not contained in the DOT.

Plaintiff's position is also supported by *Prochaska v. Barnhart*, 454 F.3d 731, 736 (7th Cir. 2006). There, the ALJ failed to ask whether the VE's testimony conflicted with the DOT. One of the limitations in issue was a reaching limitation. The Seventh Circuit held that the ALJ has an affirmative duty to enquire about conflicts with the DOT. The Court noted, "It is not clear to us whether the DOT's requirements include reaching above shoulder level, and this is exactly the sort of inconsistency the ALJ should have resolved with the expert's help." *Prochaska*, 454 F.3d at 736. This language suggests that the VE's testimony here conflicted with the DOT.

This Court finds that the VE's testimony conflicted with the DOT with regard to the mental limitations of the three jobs she identified. Of course, plaintiff's counsel did not raise the conflict at the hearing, and plaintiff therefore cannot raise it here unless the conflict was obvious enough that the ALJ should have recognized it without any prompting from plaintiff. *Overman,* 546 F.3d at 463. An ALJ who routinely handles social security disability hearings presumably has a working knowledge of DOT job descriptions; she should know that those descriptions do not speak to the mental limitations posed in the hypothetical question. Accordingly, it should have been obvious to the ALJ that the VE's testimony must have been based in part on some source other than the DOT.[2]

It is not a meaningless formality to require the ALJ to ask the VE about conflicts with the DOT. If the testimony conflicts with the DOT or is about a subject not included in the DOT, the basis of the VE's testimony obviously cannot be the DOT. The testimony of a VE can constitute substantial evidence to support the ALJ's step five finding, but only if that testimony is reliable. *McKinnie v. Barnhart*, 368 F.3d 907, 910 (7th Cir. 2004). Again, the Commissioner bears the burden of proof at step five. Although the Federal Rules of Evidence do not apply in administrative proceedings, expert witnesses still must use "reliable methods" to arrive at their conclusions. "If the basis of the vocational expert's conclusions is questioned at the hearing, however, then the ALJ should make an inquiry (similar though not necessarily identical to that of Rule 702 [Federal Rules of Evidence]) to find out whether the purported expert's conclusions are reliable." *Donahue v. Barnhart*, 279 F.3d 441, 446 (7th Cir. 2002). There is no way to assess the reliability of the VE's testimony where she testifies about a subject not included in the DOT

---

[2] Of course, the conflict with the DOT should also be apparent to an attorney experienced in social security disability law. Raising the issue at the hearing is obviously the better practice.

and gives no other basis for her testimony.[3]

The ALJ's assessment of plaintiff's RFC was not supported by substantial evidence. Therefore, this case must be remanded to the Commissioner for rehearing. The Court wishes to stress that this Memorandum and Order should not be construed as an indication that the Court believes that plaintiff was disabled during the relevant period, or that she should be awarded benefits. On the contrary, the Court has not formed any opinions in that regard, and leaves those issues to be determined by the Commissioner after further proceedings.

## Conclusion

The Commissioner's final decision denying Dawn M. Cawvey's application for DIB and SSI benefits is **REVERSED** and **REMANDED** to the Commissioner for rehearing and reconsideration of the evidence, pursuant to sentence four of 42 U.S.C. §405(g).

The Clerk of Court is directed to enter judgment in favor of plaintiff.

**IT IS SO ORDERED.**

**DATE: FEBRUARY 22, 2018**

                *s/ J. Phil Gilbert*
                **J. PHIL GILBERT**
                **DISTRICT JUDGE**

---

[3] Note that an ALJ's explanation that she relied on her unspecified past experience, knowledge of the labor market, and labor studies is an insufficient basis on which to judge the reliability of her testimony. *Herrmann v. Colvin*, 772 F.3d 1110, 1113 (7th Cir. 2014).